UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

JOSEPH ORLICH and JEAN ORLICH,        :

                      :

            Plaintiffs,     :

                      :       <u>MEMORANDUM &</u>

     -against-         :       <u>ORDER</u>

                      :

CHAMPLAIN ORCHARDS and DENNIS HARRIS,  :      23-CV-2452 (MMH)

                      :

            Defendants.    :

------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Joseph Orlich and his wife Jean Orlich sued Champlain Orchards ("Champlain") and Dennis Harris, alleging injuries sustained after a collision with Harris's work vehicle during his employment at Champlain. (ECF No. 1.)[1]  Before the Court are Plaintiffs' motion to amend their Complaint and Defendants' cross-motion to amend their counterclaim against Joseph Orlich, pursuant to Federal Rule of Civil Procedure 15(a)(2). (ECF Nos. 30–31.)  For the reasons set forth below, Plaintiffs' motion is **granted in part** and **denied in part** and Defendants' motion is **granted**.

## I.    <u>BACKGROUND</u>

Champlain is an orchard operating in Shoreham, Vermont, and Harris works there. (ECF No. 1 ¶¶ 3–4.)  Plaintiffs are residents of New York; Joseph owned and operated a 2003 Ford Escape XLT Premium ("the Orlich Car"). (*Id.* ¶¶ 1–2, 12.)

On October 15, 2022, Harris was operating a 1989 Landini 100GT tractor ("the Tractor") pulling an apple trailer on Vermont Route 74 near its intersection with Hemenway

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

Hill Road.  (*Id.* ¶¶ 7,15.)  At the same time, Joseph was driving the Orlich Car on Route 74 with Jean as the passenger.  (*Id.* ¶¶ 13, 16.)  That location was dark and without streetlights, but the road did not have debris.  (*Id.* ¶ 17.)  Plaintiffs claim that the Tractor and the attached apple trailer did not have the proper reflectors, taillights, or reflective markings, causing the Orlich Car to strike the apple trailer.  (*Id.* ¶ 18.)  Joseph sustained injuries to his right foot and chest, while Jean sustained injuries to her abdomen, chest, tailbone, and breasts.  (*Id.* ¶ 19.)

Plaintiffs filed this action on March 30, 2023, alleging negligence against Champlain and Harris.  (*See generally id.*)  Defendants answered the Complaint on May 22, 2023, asserting various affirmative defenses and a counterclaim against Joseph for contributory negligence for Jean's injuries.  (*See generally* ECF No. 9.)  Shortly before the close of fact discovery, Plaintiffs filed the instant motion seeking to amend the Complaint.  (*See* ECF No. 30).  Defendants opposed and cross-moved to amend their counterclaim against Joseph. (*See* ECF No. 31).

In the proposed Amended Complaint, Plaintiffs allege additional facts to support claims for gross negligence and (arguably) negligent supervision against Champlain.  (ECF No. 30-1 ¶ 22.)  Defendants oppose amendment and, if leave is granted, seek to amend their counterclaim to include gross negligence against Joseph based on his driving at the time of the accident.  (ECF No. 31 at 4–5.)

## II.    **LEGAL STANDARD**

After the time expires for amending a pleading as of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  However, "'motions to amend should generally be denied in instances of futility, undue delay, bad faith

or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *Zirin Tax Co., Inc. v. United States ex rel Comm'r of Internal Revenue Serv.*, No. 24-CV-1511 (NCM)(MMH), 2025 WL 626500, at *3 (E.D.N.Y. Feb. 16, 2025) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008), which in turn cites *Foman v. Davis*, 371 U.S. 178, 182 (1962)), *adopted by* 2025 WL 942799 (E.D.N.Y. Mar. 28, 2025).

"Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110–11 (2d Cir. 2001)); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal citation omitted). "Because the legal standard for futility is identical to the standard for dismissing a claim pursuant to Rule 12(b)(6), a court evaluating a motion to amend a pleading 'must take the allegations of the complaint as true and draw all reasonable inferences in favor of the [movant].'" *Steele v. Paypal, Inc.*, No. 05-CV-1720 (ILG)(VVP), 2006 WL 3612852, at *1 (E.D.N.Y. Dec. 11, 2006) (quoting *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999)).

## III.   DISCUSSION[2]

"Under New York law, to prevail on a claim of gross negligence, a plaintiff must establish (1) the existence of a duty on the part of the defendant to the plaintiff; (2) a breach of

---

[2] The Court assumes without deciding that Plaintiffs establish good cause for seeking leave to amend after April 21, 2024, the deadline for motions to amend pleadings, because the underlying

this duty; (3) injury to the plaintiff as a result"—in other words, the standard elements of negligence—"and (4) that the defendant's conduct 'evinces a reckless disregard for the rights of others or "smacks" of intentional wrongdoing.'" *Remler v. Cona Elder L., PLLC*, No. 21-CV-5176 (ARR)(LB), 2022 WL 4586243, at *8 (E.D.N.Y. Sept. 29, 2022) (quoting *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996)).[3] "Recklessness in the context of a gross negligence claim means 'an extreme departure from the standards of ordinary care,' such that 'the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *In re Brookhaven Nat'l Lab'y Trichloroethylene Cases*, 511 F. Supp. 3d 374, 392 (E.D.N.Y. 2020) (quoting *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009) (cleaned up)).

Plaintiffs plausibly allege a gross negligence claim regarding Champlain's use of safety equipment. "Generally, 'the question of gross negligence is a matter to be determined by the trier of fact.'" *Milestone Aviation Grp. Ltd. v. DSV Air & Sea Inc.*, No. 24-CV-3136 (JPC), 2025 WL 846142, at *3 (S.D.N.Y. Mar. 18, 2025) (quoting *Dolphin Holdings, Ltd. v. Gander*

---

facts were determined in depositions in October and November 2024. *See Alicea v. City of New York*, No. 16-CV-7347 (JLR), 2023 WL 3724131, at *4 (S.D.N.Y. May 30, 2023).

[3] In this diversity action, the Court applies New York's choice-of-law rules to determine whether to apply Vermont or New York substantive law to the proposed amendments. *See Kinsey v. New York Times Co.*, 991 F.3d 171, 176 & n.11 (2d Cir. 2021) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state.") (citation omitted). "Under New York choice-of-law rules, 'the first step in any choice of law inquiry is to determine whether there is an "actual conflict' between the rules of the relevant jurisdictions." *Id.* at 176 & n.12 (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419-20 (2d Cir. 2001) and citing in turn *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)). The Court agrees with the parties' assessment that there is no conflict of laws between New York and Vermont for gross negligence claims because in both states, "[g]ross negligence is a much more severe breach of duty that goes beyond a simple mistake and reflects reckless disregard for the safety of others." (ECF No. 34 at 1–2 (citing, *e.g.*, *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 441 (E.D.N.Y. 2011) and *Meli v. City of Burlington, Vt.*, 585 F. Supp. 3d 615, 636 (D. Vt. 2022).)

*& White Shipping, Inc.*, 998 N.Y.S.2d 107, 109 (2d Dep't 2014)).  Plaintiffs allege that the accident was caused by Champlain's "failing to ensure that its tractors possess the necessary rear lighting and/or reflectors despite previously receiving an infraction for such failure years prior" and "failing to be aware of and/or abide by Title 23 VSA Section 1361[.]" (ECF No. 30-1 ¶ 22.)[4]  Nonparty William Suhr, the Tractor's owner, testified at his deposition that approximately four to five years before the accident here, Champlain was penalized for failing to install rear lights on its apple trailer.  (ECF No. 30-2 at 37.)  Drawing all reasonable inferences in Plaintiffs' favor, a jury could plausibly conclude that Champlain was aware of the dangers when its vehicles lacked appropriate lighting and safety reflectors based on its prior violation of Vermont law yet intentionally did not install the safety features on the apple trailer before the accident.  The jury could also find that, given the known dangers of operating farm vehicles without appropriate safety equipment, Champlain should have taken additional precautions to prevent similar accidents.  *See, e.g.*, *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 481–82 (E.D.N.Y. 2010) ("In view of great damage to customers and business that breaches of a computer system may cause, a jury may find that responsible entities, such as Emporos, should take special precautions to protect these systems.").  The proposed allegations therefore pose a factual question for the jury to determine whether Champlain's alleged failure to ensure its tractor was equipped with the rear lighting or reflectors, despite receiving the prior infraction, constitutes reckless disregard.  *See also Lin v.*

---

[4] Plaintiffs rely on Title 23 of the Vermont Statutes Annotated, Section 1361, which provides in relevant part, that "farm machinery" or other equipment "shall have attached to them a red light or reflector that shall be so displayed as to be clearly visible from the rear" for the period from 30 minutes after sunset to 30 minutes before sunrise.  VT. STAT. ANN. tit. 23, § 1361.

*Amazon.com, Inc.*, No. 21-CV-6203 (KAM)(MMH), 2023 WL 5720063, at \*3–4 (E.D.N.Y. Sept. 5, 2023) (construing *pro se* litigant's allegations that "'Defendants clearly knew the hazards and the defect of the Picker position,' and that 'Defendants disregarded the daily data that showed that pickers' performance drop sharply after long periods of walking. Defendants chose coaching, warning, disciplining or firing pickers instead of improving defective task design and reducing irrational task requirements'" as raising gross negligence or recklessness claims) (cleaned up).

However, Plaintiffs' proposed amendments regarding Champlain's training and supervision of Harris are futile. Plaintiffs proffer that Champlain is grossly negligent for "failing to properly and/or adequately train its employees to operate its vehicles and/or tractors" and "failing to provide [Harris] with [Champlain's] driver protocol[.]" (ECF No. 30-1 ¶ 22.) Defendants correctly note that Plaintiffs do not set forth "any facts that support a claim that Defendants' training methods are contrary to the customs and standards of the industry." (ECF No. 31 at 2.) Plaintiffs' proposed amendments regarding negligent supervision are thus futile because they do not plausibly allege an extreme departure from the standards of ordinary care, a required element of a gross negligence claim.

Further, to the extent that Plaintiffs submit a separate theory of liability based on a negligent training and supervision claim, that claim also fails. Under New York law,

> [t]o state a claim for negligent supervision or retention . . . in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

6

*Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014) (citing *Doe v. City of New York*, No. 09-CV-9895 (SAS), 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013)), *aff'd sub nom. Ahluwalia v. St. George's Univ.*, 626 F. App'x 297 (2d Cir. 2015). *See also Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157–58 (N.Y. 2023) ("When an employer has notice of its employee's propensity to engage in tortious conduct, yet retains and fails to reasonably supervise such employee, the employer may become liable for injuries thereafter proximately caused by its negligent supervision and retention.") (citing 52 N.Y. JURIS. 2D EMP. RELS. § 391 and *Park v. New York Cent. & H.R.R. Co.*, 155 N.Y. 215, 217 (N.Y. 1898)).  Plaintiffs do not allege any facts regarding whether Champlain knew or should have known of Harris's propensity to operate the Tractor in a manner that could injure Plaintiffs, including creating a risk of collision with the attached apple trailer.  Thus, the proposed amendments regarding Champlain's training and supervision of Harris are futile.

Finally, the Court will permit Defendants' proposed and unopposed gross negligence counterclaim against Joseph.  In the counterclaim, Defendants allege that any injuries to Jean were caused by Joseph's negligence.  (ECF No. 31 at 4–5).  Defendants seek to allege that Joseph was "driving at an excessive speed despite seeing lights on the vehicle in the land ahead of him" and "fail[ed] to take any evasive maneuvers to avoid a rear-end collision with an illuminate and visible tractor and trailer in the roadway ahead of him."  (*Id.*)  Joseph testified that while driving on Route 74, he saw "two white lights" in the distance ahead of him, thought they were the headlights of another vehicle coming towards him, and applied his brakes, but ultimately crashed into the apple trailer at nearly 35 miles per hour.  (ECF No. 31-3 at 21–23.)  Suhr's photographs of the Orlich Car soon after the accident show that "the trailer was indeed illuminated all the way to the rear of the trailer," but according to Defendants, "[Joseph] drove

7

at an excessive speed straight into the rear of the trailer." (ECF No. 31 at 3; *see also* ECF No. 31-2.) While the Court declines to opine on the success of this counterclaim, "if the underlying facts and circumstances upon which the moving party relies support the claim or defense sought to be added, the party should generally be allowed to test that claim or defense on the merits." *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 267 (S.D.N.Y. 2014) (citing *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989)). For this reason, Defendants may pursue their counterclaim against Joseph Orlich.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' motion to amend the Complaint is **granted in part** and **denied in part**. Plaintiffs may assert a claim for gross negligence based on Champlain's failure to use safety equipment but not related to Champlain's training or supervision of Harris. Defendants' motion to amend their counterclaim to assert a claim of gross negligence against Joseph Orlich is **granted**. By **April 10, 2026**, Plaintiffs shall file an amended complaint consistent with this Memorandum and Order. By **April 24, 2026**, Defendants shall answer or otherwise respond to the Amended Complaint and amend their counterclaim. By **May 1, 2026**, Plaintiffs shall respond to Defendants' counterclaim.

<b>SO ORDERED.</b>

Brooklyn, New York
March 27, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

8